STATE *ex rel.* COLLINS *v.* LELAND SOUTHWESTERN R. CO.
et al.

[91 South. 7. In Banc. No. 21938.]

1. MANDAMUS.  *Writ not issued to compel owners without financial resources to operate railroad.*

Where a railroad corporation has no equipment of any kind, no funds, and no source from which it can derive funds, and its sole asset is an abandoned line of road originally eleven miles long and constructed with second-class light rails, suitable only for a logging road, and three and one-half miles of this road had been already taken up, and the balance is in such condition that it will have to be entirely rebuilt before it can be operated, a writ of mandamus will not be issued to compel or attempt to compel, such corporation to rebuild, equip, and operate such road, since without money or financial resources of any kind, the corporation would be unable to comply with such order, and its issuance would avail nothing.

2. RAILROADS.  *Discontinuance of branch line held justified.*

Where a branch line of railroad eleven miles long had been constructed through a forest, and operated principally as a logging road, and, after all the timber adjacent thereto had been cut and removed except such as was suitable only for ties and staves, such road had been abandoned and one-third of the track taken up, and the balance of the road was in such condition that it could not be operated as a common carrier without being entirely rebuilt, and where the territory to be served by such road was already afforded ample railroad facilities by two main lines of road, and there was no prospective traffic which would make it possible to operate it except at a heavy loss, and the population to be served by such branch road was very small, and no investments have been made, and no development has resulted, on account of the existence of such road, and it was clear from the evidence that there was no public need to be served by the road and no reasonable expectation of present or future traffic which would justify the expenditure required for its construction, equipment, and operation, mandamus to compel the reconstruction and operation of such branch road was properly denied.

APPEAL from circuit court of Washington county.
HON. S. F. DAVIS, Judge.
Suit by the state, on the relation of Ross A. Collins, for

mandamus against the Leland Southwestern Railroad Company and another. Judgment denying writ, and relator appeals. Affirmed.

*F. H. Lotterhos,* Assistant Attorney-General, for appellant.

*Percy & Percy,* for appellees.

Cook, J., delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Washington county, Miss., in a suit by the state, through its attorney-general, seeking to mandamus the Leland Southwestern Railroad Company or the Yazoo & Mississippi Valley Railroad Company to keep the track of the Leland Southwestern Railroad in a reasonably safe condition and to provide reasonable and safe equipment for the purpose of transporting freight and passengers over said line and to restore and place in proper repair such portions of said track as had been torn up. There was a judgment in the circuit court denying the mandamus, and from this judgment this appeal was prosecuted.

The petition filed by the attorney-general sets forth that the Leland Southwestern Railroad Company was chartered under the laws of the state of Mississippi in 1906, and was authorized to construct a road in Washington county, beginning at a point on the Yazoo & Mississippi Valley Railroad and extending eleven miles; that rights of way were secured by condemnation and deeds for said railroad, and it was thereafter leased to the Darnell-Love Lumber Company for the purpose of hauling logs from its lands to its mills at Leland, Miss., and also for the purpose of transporting freight and passengers; that the said lumber company recently ceased to operate the road and defendants fail and refuse to operate it. The petition further alleges that, while the Leland Southwestern Railroad Company

was chartered as a separate railroad corporation, its stock was really owned, and it was and is a part of the Yazoo & Mississippi Valley Railroad Company; that the said Yazoo & Mississippi Valley Railroad Company was engaged in tearing up the tracks of the Leland Southwestern Railroad Company, with the view of using the rails, spikes, and fastenings upon another line of road proposed to be constructed for the benefit of the Darnell-Love Lumber Company; that the Leland Southwestern Railroad Company and the Yazoo & Mississippi Valley Railroad Company are failing to supply cars to handle the freight offered for transportation, a large quantity of freight having been offered by divers parties, and that such failure was resulting in great pecuniary loss and damage to freight and property and in great injury to the land and business interests of the country, and to the wrong and injury of the public generally; that the said two roads are shirking their duty to the state and subjecting the public to great inconvenience, and injuring and destroying the industries of the country, and defeating the purpose and object of their creation; that they have allowed, and are allowing, the roadbed and tracks to run down and become unfit and unsuitable for the proper movement of trains and of cars thereon; that they have abandoned the operation of the railroad, and the failure to discharge their duties and obligations to the state of Mississippi and to the public has resulted in great confusion, inconvenience, delays, and injuries to the public generally; and the prayer of the petition is that the court issue its writ of mandamus requiring whichever of the defendants may be shown to be the owner of the railroad in question to keep the tracks of said road in a reasonably safe condition and provide reasonable and proper equipment for same, and to operate it in a reasonable, careful, and prudent manner, and to restore and place in proper repair such portions of said track as have been already torn up.

To this petition defendants filed a plea of general issue, and gave notice of matters to be proven thereunder. The

Leland Southwestern Railroad Company, in its notice under the general issue, set forth that the line of railroad in question was constructed by the Darnell-Love Lumber Company for the purpose of hauling timber to its sawmills at Leland, Miss.; that it was constructed, and from its completion was operated exclusively by the Darnell-Love Lumber Company for its own benefit as a logging railroad; that it was constructed without exercising the power of eminent domain except in one instance, which was to acquire a right of way over the land of a *non compos mentis;* that the road was never operated as a common carrier for freight and passengers, was never held out to the world to be a common carrier, and was never considered nor regarded by the public as a common carrier; that it had no equipment for handling freight generally or for handling passengers; that the line of said road was located almost an equal distance from the main line of the Yazoo & Mississippi Valley Railroad Company and the Riverside division of said railroad; that it was built through the forest, and there was nothing to justify the construction of it except the removal of the timber upon the lands of the Darnell-Love Lumber Company; that there was and is no country tributary to it to support a railroad; that there is no business in freight or passengers sufficient to defray the expense of operating a railroad; that defendant was without money or financial resources with which to operate this road and the operation of it would necessarily be accompanied by heavy financial loss; that the public was not interested in the continued operation of it and there was no traffic demanding such operation; that any traffic that might be handled by it would be afforded ample railroad facilities either by the main line of the Yazoo & Mississippi Valley or the Riverside division of said railroad; and that to mandamus the Leland Southwestern Railroad Company to operate the road would be taking its property without due process of law, contrary to the Fourteenth Amendment to the Constitution of the United States.

To this notice a counter notice was filed to the effect that the plaintiff would undertake to prove that said railroad was operated as' a common carrier for freight and passengers, and was held out to the world as such, and was so considered by the public.

Under the plea of general issue by the Yazoo & Mississippi Valley Railroad Company, notice was given that on the trial of the case, proof would be offered to show that it did not own the Leland Southwestern Railroad Company, nor any stock in same; that it had no ownership in the rails and other property of said railroad; that it did not have, and never had any running right over said railroad; that it did not operate and never had operated, said road; that said road had never been operated as a common carrier of freight or passengers, but was constructed solely as a logging road, and has been operated exclusively as a. logging road for the benefit of the Darnell-Love Lumber Company; that there was no traffic to be subserved by the operation of the road, and that said Yazoo & Mississippi Valley Railroad Company was under no duty to the plaintiff or any one else to maintain and operate said line of road; that four miles of the track in question had been taken up prior to the filing of the petition for mandamus; that the operation of the road had been discontinued for more than eighteen months prior to the filing of said suit; that the road had been originally constructed for temporary use as a logging road, and that, to require the operation of said road, would necessitate the building of the entire road anew, at an expense of not less than three hundred and seventy-five thousand dollars to build and equip it ready for operation; that the operation of same, owing to the small amount of freight and passenger business which would be handled over it, would necessarily be a heavy and continuous pecuniary loss, running into the thousands of dollars each year; that the expenditure of the money necessary to rebuild and equip the road for operation, and the operation of it would involve such a pecuniary outlay as would cripple the efficiency of the Yazoo & Mississippi

Valley Railroad Company in the operation of its main lines and in the discharge of its duty to the public, and therefore said railroad company is entitled to abandon the operation of said railroad, if the court should hold that under any circumstances it was liable for such operation; that the operation of such road involved such a pecuniary loss as would amount to the taking of the property of defendant without due process of law, contrary to the Fourteenth Amendment to the Constitution of the United States.

The testimony offered at the trial established substantially the following facts: That the Darnell-Love Lumber Company owned two large sawmills at Leland, Miss., and also owned a large tract of timber near that place; that this lumber company, desiring to secure the construction of a railroad from Leland through this body of timber in order to facilitate the removal of timber from certain lands in that vicinity, entered into a contract with the Yazoo & Mississippi Valley Railroad Company, under the terms of which it was agreed that, for the purpose of constructing such a road, the lumber company would furnish, free of cost, to the railroad company a right of way for trackage purposes, and such additional lands as might be necessary for station grounds and other necessary purposes, and also furnish the ties and timbers for the construction of the road, and also do all the grading and construction work. The railroad company agreed to furnish and deliver free of charge all necessary rails, switches, frogs, and spikes, and to pay to the lumber company two thousand five hundred dollars for each mile of track built, and to pay each year the sum of one hundred and forty-five dollars per mile for maintaining the road. It was further agreed that cars loaded with logs were to be switched to the mills of the lumber company over the line of the railroad company at a charge of one dollar per car, and the lumber company agreed that all lumber manufactured from these logs would be shipped over the lines of said railroad company. The lumber company was to keep the road in repair, and the agreement was to continue in force for a period of fifteen

years from the 5th day of June, 1906, unless all the timber of the lumber company had been removed prior to that date, in which event the agreement should cease.

It further appears from the testimony that the Leland Southwestern Railroad Company was chartered by the state of Mississippi on August 30, 1906, and capitalized at one hundred thousand dollars; that the subscribers for the stocks were four of the incorporators, who took one share of stock each, and the Mississippi Valley Corporation, which subscribed for ninety-nine thousand five hundred dollars of the stock; that five hundred dollars of the stock was paid by the directors; that the cost of constructing the eleven miles of road, amounting to fifty-three thousand five hundred and six dollars and three cents, was paid by the Mississippi Valley Corporation; that the Mississippi Valley Corporation is a holding company and is controlled by the Illinois Central Railroad Company; that the Mississippi Valley Company is also a holding company, and owns a controlling interest in the Yazoo & Mississippi Valley Railroad Company; that the Leland Southwestern Railroad was constructed by the Darnell-Love Lumber Company, under the contract hereinbefore mentioned; that the total assets of the Leland Southwestern Railroad Company consisted of the money which defrayed the cost of the construction; that it had no revenues and no source from which revenue could be derived; that it had no engines, passenger or freight cars, no equipment of any kind, and possessed no property except its franchise rights and a right of way which had been furnished by the Darnell-Love Lumber Company; that in acquiring this right of way the right of eminent domain was exercised in one instance; that the railroad built by the Darnell-Love Lumber Company was a logging road, built without grading and on sawdust ballast; that no provisions were made for stations, telegraph or telephone lines in connection with the road; that the equipment used by the Darnell-Love Lumber Company in operating the road consisted of one engine and logging cars; that during the eleven years the road was operated

by the Darnell-Love Lumber Company it hauled nothing except the timber taken from the lands of the lumber company, and also a small quantity of freight hauled for the employees of the lumber company, and a few carload shipments for J. M. Wilson, who had been a member of the company and one of the original builders of the railroad; that the total amount of freight earned by the railroad during its entire existence was one thousand one hundred and three dollars and five cents; that during the year 1914 a freight tariff was issued, but this tariff was never submitted to, or approved by, the Railroad Commission; that the Railroad Commission never exercised any sort of supervision over this road; that the Leland Southwestern Railroad Company was assessed for taxes as a branch of the Yazoo & Mississippi Valley Railroad Company, and the taxes were paid by the latter company, which profited from hauling the lumber manufactured from the timber of the Darnell-Love Lumber Company.

It further appears from the evidence that the Leland Southwestern Railroad was eleven miles long and was constructed almost midway between the main line and the Riverside division of the Yazoo & Mississippi Valley Railroad Company; that there is no point of the Leland Southwestern Railroad which is more than five and a half miles from one of these lines of the Yazoo & Mississippi Valley Railroad Company; that during the entire existence of the Leland Southwestern Railroad Company only a few hundred acres of land on or adjacent to this road had been cleared and put into cultivation; that there is a very small population to be served by this road; that all the timber adjacent to this road had been cut and removed except such as was suitable only for cross-ties and staves; that much of the timber remaining on this land was as accessible to one of the main lines of the Yazoo & Mississippi Valley Railroad Company, as to the Leland Southwestern; that, if this road should be rebuilt and operated, the principal amount of freight available would consist of cross-ties and staves, which may or may not be manufactured; that it would take

several years to manufacture the timber remaining on this cut-over land; that if all the timber remaining on this land should be manufactured it would not yield a total amount of freight in excess of thirty thousand dollars.

It further appears that the line of the Leland Southwestern Railroad was originally constructed of second-class light rails, suitable only for a logging road; that during the year 1916 the Darnell-Love Lumber Company completed its operation and terminated its contract with the Yazoo & Mississippi Valley Railroad Company; that, prior to the filing of this petition for mandamus, three and a half miles of the road had been taken up; that the balance of the road was in such condition that no sort of train could be operated over it; that it would be necessary to entirely rebuild the whole line to put it into condition for the business of a common carrier; that the expense of rebuilding the road and providing facilities for the operation thereof would be large, the exact amount depending upon the character or class of road constructed and service furnished.

The first question presented for decision is whether, under the state of facts disclosed by this record, an order will be issued compelling, or attempting to compel, the Leland Southwestern Railroad Company to reconstruct and operate this line of road? We think this question must be answered in the negative. It is clearly established that this corporation has no equipment of any kind, no funds, and no source from which it can derive funds, and that its sole asset is this abandoned, dismantled road, three and a half miles of which have already been taken up, and the balance in such condition that it cannot be operated. Without money or financial resources of any kind, this corporation would be unable to comply with an order to rebuild the road, or to operate it, if the track were replaced, and, under these circumstances, the issuance of such an order would avail nothing. A similar question was presented in the case of *State ex rel. Little* v. *Dodge City, M. & T. Railroad Co.*, 53 Kan. 329, 36 Pac. 755, 24 L. R. A. 564, where the court said:

"Therefore, the question is whether the court will compel, or attempt to compel, the railway company, a bankrupt corporation, to re-lay the track and repair the roadbed. The court will not make a useless or futile order. It will not do a vain thing. The order prayed for should only be issued in the interest of the public. If the track is replaced, there is no reasonable probability that the road will be or can be operated."

In *State* v. *Colony Trust Co.,* 215 Fed. 307, 131 C. C. A. 581, L. R. A. 1915A, 549, the court said: "Here is a case where the line sought to be abandoned is not only not self-supporting, but its continued operation jeopardizes the successful operation of the entire system of which it is merely a part. Moreover, its continued operation in its present condition is dangerous ·to life and property, and there is no money or financial ability to improve its condition. Not only so, but there is little public necessity for its continued operation, whereas there is a great public necessity for the continued operation of the balance of the system. In such circumstances the railroad company may abandon such an unprofitable and irreclaimable part of ·its road, and neither the state nor unfortunate investors along the line can justly complain. They cannot force a railroad company to do the impossible." *Jack* v. *Williams,* 113 Fed. 823, 145 Fed. 281; *Central Bank & Trust Co.* v. *Cleveland et al.,* 252 Fed. 530, 164 C. C. A. 446; *Bullock* v. *State of Florida,* 254 U. S. 513, 41 Sup. Ct. 193, 65 L. Ed. 222.

The next question presented is whether, by reason of the stock ownership of the Mississippi Valley Corporation, the Leland Southwestern Railroad should be held to be a branch of the Yazoo & Mississippi Valley Railroad Company, and if so, whether under the facts in evidence here, the Yazoo & Mississippi Valley Railroad Company should be compelled by mandamus to reconstruct and operate this road. Conceding, for the purposes of this decision, that the Yazoo & Mississippi Valley Railroad Company is in reality the owner of this branch line, we do not think the facts here justify the issuance of a writ of mandamus to compel it to reconstruct and operate the road.

The territory to be served by this road is already afforded unusual railroad facilities, as it lies between two existing lines of railroad which are only a few miles apart.  The population to be served thereby is very small, and the construction and operation of the road would confer comparatively little benefit on the general public.  There is nothing in the testimony to suggest that, during the time the road was operated, any investments have been made along the road on account of its existence.  There is nothing to indicate that there has been any development on or along the road which resulted from its existence.  The construction and equipment of this road would impose a heavy burden on the company constructing it, and there is no prospective traffic which would make it possible to operate it except at a heavy loss.  It is clear, from this record, that there is no public need to be served by the road, and no reasonable expectation of present or prospective traffic which would justify the expenditure required for its construction, equipment, and operation, and, under the particular facts here in evidence, we think the judgment of the court below, denying the mandamus, was correct.

*Affirmed.*